# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**Plaintiff,** | **CRIMINAL NO.** 08-36 (PJB) |
| **VS.** | **COUNTS:** |
| [1]  **ANIBAL ACEVEDO VILA,**<br>[2]  **CANDIDO NEGRON MELLA,**<br>[3]  **SALVATORE AVANZATO,**<br>[4]  **JORGE VELASCO MELLA,**<br>[5]  **ROBERT M. FELDMAN,**<br>[6]  **MARVIN I. BLOCK,**<br>[7]  **RAMON VELASCO ESCARDILLE,**<br>[8]  **EDWIN COLON RODRIGUEZ,**<br>[9]  **ENEIDY COREANO SALGADO,**<br>[10]  **LUISA INCLAN BIRD,**<br>[11]  **MIGUEL NAZARIO FRANCO,**<br>[12]  **RICARDO COLON PADILLA,**<br>[13]  **JOSE GONZALEZ FREYRE,** | 2 USC 434(b)<br>2 USC 437g(d)(1)(A)<br>2 USC 441a(a)(1)<br>2 USC 441b(a)<br>2 USC 441e<br>2 USC 441f<br>18 USC 2<br>18 USC 371<br>18 USC 666(a)(1)(A)<br>18 USC 1001(a)(1)<br>18 USC 1001(a)(2)<br>18 USC 1343<br>26 USC 7206(1) |
| **Defendants.** | **(TWENTY-SEVEN COUNTS)** |

## SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Superseding Indictment:

### GENERAL ALLEGATIONS APPLIED TO COUNTS ONE THROUGH NINE

### Relevant Entities and Individuals Involved

1.      The "Comité Acevedo Vilá Comisionado 2000, Inc." (hereinafter referred to as "the Committee") was a political committee, formed in 1999 in Puerto Rico, that had been authorized by the defendant, **ANIBAL ACEVEDO VILA**, to serve as his principal campaign committee for his 2000 campaign for Resident Commissioner to the United

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 2**

States House of Representatives, and later for his 2002 re-election campaign. The Committee was authorized to solicit and receive contributions on the defendant's behalf.

2.      The Committee incurred a significant campaign debt for the Resident Commissioner election and, particularly, for the primary.   The reported campaign debt at the close of 2000 was approximately $545,000.   Between the years 2001 and 2003, the Committee carried a sizeable debt on its books, and the Committee continued to raise money in order to eliminate this debt.

3.      Company A was a media and public relations firm that provided services to the Committee in connection with the 1999 primary election for the position of Resident Commissioner.   The Committee owed a majority of this campaign debt to Company A for its services rendered.

4.      The Federal Election Commission (hereinafter "FEC") was an agency of the Executive Branch of the United States government charged with the administration and civil enforcement of the Federal Election Campaign Act (hereinafter "FECA").   The FECA governed the making and reporting of contributions to federal candidates, including candidates for election to the Office of Resident Commissioner to Congress for the Commonwealth of Puerto Rico, and specifically:

A.      Limited the amount of contributions from individuals;

B.      Prohibited contributions from corporations and foreign nationals;

C.      Prohibited contributions by one person in the name of another person (hereinafter referred to as "conduit contributions"); and

D.    Required a political committee authorized by a federal candidate to file periodic reports with the FEC identifying each person who made a contribution during the reporting period that aggregated over $200.

5.    The FEC was responsible for providing accurate information to the public regarding the amounts and sources of contributions to federal candidates. The FEC relied upon and used the periodic reports filed by political committees to inform the public and to enforce the FECA.

6.    Defendant **ANIBAL ACEVEDO VILA** (hereinafter "defendant **ACEVEDO VILA**") won the election for Resident Commissioner in November, 2000. Defendant **ACEVEDO VILA** subsequently served as an elected member of the United States House of Representatives as Resident Commissioner for the Commonwealth of Puerto Rico from January 2001 through January 2005.

7.    Defendant **ENEIDY COREANO SALGADO** (hereinafter "defendant **COREANO SALGADO"**) was a scheduler at the Resident Commissioner's Office in Washington, D.C. Defendant **COREANO SALGADO** eventually became Administrative Director for the Resident Commissioner's D.C. Office.

8.    Defendant **LUISA INCLAN BIRD** (hereinafter "defendant **INCLAN BIRD**") was an attorney licensed to practice law in the Commonwealth of Puerto Rico. Defendant **INCLAN BIRD** was a Legal Advisor for the Resident Commissioner's Office in San Juan, Puerto Rico. Defendant **INCLAN BIRD** was also a volunteer for the Committee and organized fund-raising events in Puerto Rico.

9.      Defendant, **RAMON VELASCO ESCARDILLE** (hereinafter "defendant **VELASCO ESCARDILLE**") was the Treasurer of the Committee.  Defendant **VELASCO ESCARDILLE's**  duties included reviewing campaign finance regulations, reviewing and filing reports with the FEC, and processing reimbursement checks to contributors.

10.     Defendant **EDWIN COLON RODRIGUEZ** (hereinafter "defendant **COLON RODRIGUEZ**") was the Assistant Treasurer and Custodian of Records for the Committee. Defendant **COLON RODRIGUEZ** was responsible for receiving contribution checks from the Continental United States and from within the Commonwealth of Puerto Rico, and inputting the information into a computerized data base at the Committee.  Defendant **COLON RODRIGUEZ** also worked with defendant **VELASCO ESCARDILLE** in the preparation of drafts of  FEC finance reports.

11.     Defendant **ROBERT M. FELDMAN** (hereinafter "defendant **FELDMAN**") was the owner and  president  of Delaware Valley Consulting, Inc. and United Consulting Inc., both of which were Pennsylvania corporations. **FELDMAN** was also a fundraiser for political candidates in Pennsylvania and other states.   Defendant **ACEVEDO VILA** appointed defendant **FELDMAN** as the United States Finance Chairman for the Committee on or about April 18, 2002.

12.     Defendant **CANDIDO NEGRON MELLA** (hereinafter "defendant **NEGRON MELLA**") was the President of Dental One, Inc. (hereinafter "Dental One"), a Pennsylvania corporation that provided dental consulting and administration services to health management organizations and to state and local governments.  Defendant **NEGRON**

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 5**

---

**MELLA** was also president and principal stockholder of Precision Health Services (hereinafter "PHS"), a Pennsylvania corporation engaged in the dental administration business. Defendant **ACEVEDO VILA** appointed defendant **NEGRON MELLA** as the United States Deputy Finance Chairman for the Committee sometime in 2002, the exact date being unknown to the Grand Jury.

13. Defendants **FELDMAN** and **NEGRON MELLA** were also business associates. Defendants **FELDMAN** and **NEGRON MELLA** both served as consultants for a Wisconsin corporation that was a multi-state administrator of Medicaid dental programs in the United States.

14. Defendant **SALVATORE AVANZATO** (hereinafter "defendant **AVANZATO**") was the owner and Chief Executive Officer of Dental One. Dental One maintained offices in Philadelphia and had approximately ten employees.

15. Defendant **JORGE VELASCO MELLA** (hereinafter "defendant **VELASCO MELLA**") was the cousin of defendant **NEGRON MELLA**, and a manager at Dental One. In 2004, defendant **VELASCO MELLA** worked in the San Juan District Office of defendant **ACEVEDO VILA**.

16. Defendant **MARVIN I. BLOCK** was an associate of defendant **FELDMAN**.

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 6**

<hr>

## COUNT ONE

**Conspiracy**
**Title 18, United States Code, Section 371**
**Title 2, United States Code, Sections 441a, 441b, 441e, 441f**
**Title 18, United States Code, Section 1001(a)(1) and (a)(2)**

1.      Beginning in or about September 1999, and continuing thereafter through on

or about June 30, 2003, in the District of Puerto Rico and elsewhere, the defendants,

**[1] ANIBAL ACEVEDO VILA,**
**[2] CANDIDO NEGRON-MELLA,**
**[3] SALVATORE AVANZATO,**
**[4] JORGE VELASCO-MELLA,**
**[5] ROBERT M. FELDMAN,**
**[6] MARVIN I. BLOCK,**
**[7] RAMON VELASCO ESCARDILLE,**
**[8] EDWIN COLON RODRIGUEZ,**
**[9] ENEIDY COREANO SALGADO,**
**and**
**[10] LUISA INCLAN BIRD,**

did knowingly, intentionally and willfully combine, conspire, confederate, and agree with

each other, and with others known and unknown to the Grand Jury, to knowingly and

willfully commit offenses against the United States, that is, to knowingly and willfully violate

the Federal Election Campaign Act, and specifically, to make and receive contributions to

the Comité Acevedo Vilá Comisionado 2000, Inc., in excess of the quantitative limits

specified in Title 2, United States Code, Section 441a(a)(1); to make and receive

contributions from funds belonging to corporations in violation of Title 2, United States

Code, Section 441b(a); to make and receive conduit contributions, in violation of Title 2,

United States Code, Section 441f; to make and receive contributions by foreign nationals,

in violation of Title 2, <u>United States Code</u>, Section 441e; to cause the aforesaid contributions to be inaccurately reported to the FEC, in violation of Title 2, <u>United States Code</u>, Section 434(b); to knowingly and willfully make and cause to be made materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the FEC, in violation of Title 18, <u>United States Code</u>, Section 1001(a)(2); and to knowingly and willfully falsify, conceal, and cover up by trick, scheme, and device a material fact in a matter within the jurisdiction of the FEC, in violation of Title 18, <u>United States Code</u>, Section 1001(a)(1).

## OBJECTS OF THE CONSPIRACY

2.      It was an object of the conspiracy to knowingly and willfully solicit and receive illegal contributions for the candidacy of defendant **ACEVEDO VILA** as Resident Commissioner to the United States House of Representatives for the Commonwealth of Puerto Rico, both for the retirement of past campaign debts and to fund ongoing campaigns.

3.      It was a further object of the conspiracy to conceal from the FEC and the public  the illegal nature of the contributions and the true extent and nature of the relationship between defendants **FELDMAN**, **NEGRON MELLA**, and **AVANZATO** and their associates and defendant **ACEVEDO VILA**, including the access and influence that defendant **ACEVEDO VILA** afforded and exercised on their behalf in Puerto Rico.

4.      It was a further object of the conspiracy to mislead the FEC, the Federal Bureau of Investigation, and the Internal Revenue Service in their investigations of

allegations relating to campaign improprieties.

### MANNER AND MEANS OF THE CONSPIRACY

5.      The manner and means of the unlawful conspiracy included:

### Puerto Rico Collaborator Contributions

a.      Between September 1999 and May 2000, defendants **ACEVEDO VILA**,
**VELASCO ESCARDILLE**, **COLON RODRIGUEZ**, and others known or unknown to the
grand jury agreed to solicit and solicited "collaborator" contributions to the Committee from
businessmen in the Commonwealth of Puerto Rico. A "collaborator" was a campaign
contributor who made a contribution directly to Company A, which in turn applied the
contribution against the Committee's debt with Company A. The Committee did not record
collaborator contributions in the Committee's books and records or report them to the FEC
as required by law, thus rendering collaborator contributions off-the-book contributions.
Approximately sixteen collaborators were directed to issue checks, in many cases drawn
from corporate accounts, directly to Company A, which in turn credited the payments to
the Committee's debt with the firm.

b.      Company A disguised the collaborator contributions as payments to
Company A for services rendered even though Company A never provided any *bona fide*
services to any of the collaborators.    In most instances, Company A generated fake
invoices for the amounts of the collaborator contributions to give the transaction the
appearance of legitimacy.

c.       In this manner, the Committee received through Company A approximately

$127,000 in the form of corporate contributions paid by collaborators during the years 1999 and 2000. The Committee also received through Company A approximately $55,000 in the form of excessive contributions paid by collaborators during the years 1999 and 2000. The Committee did not report any of the collaborator contributions in its periodic reports filed with the FEC, nor did the Committee ever report the true form or nature of the collaborator contributions to the FEC.

### Family and Staff Contributions

d.      Between in or about September 2001, through in or about December 2002, the defendants **ACEVEDO VILA** and **INCLAN BIRD** agreed to and each personally, knowingly and willfully solicited and received conduit contributions and personally and directly reimbursed conduits for their contributions with cash or checks. A "conduit contribution" was an illegal campaign contribution made by one person in the name of another, commonly referred to as a "conduit".

e.      Defendants **ACEVEDO VILA** and **INCLAN BIRD** solicited conduit contributions from staff members at the Resident Commissioner's Office in San Juan, Puerto Rico and from close family members of defendant **ACEVEDO VILA** for the Committee during the years 2001 and 2002. Defendants **ACEVEDO VILA** and **INCLAN BIRD** then personally and directly reimbursed conduits for their contributions with cash or checks. The Committee falsely reported these conduit contributions to the FEC as legitimate contributions made by the conduits to the Committee, thereby concealing the true form and nature of the contributions from the FEC.

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 10**

---

### Philadelphia Contributions

f.      Between February, 2002, and June, 2003, defendants **ACEVEDO VILA**,

**FELDMAN, NEGRON MELLA , AVANZATO** and **BLOCK** agreed to solicit and solicited

and received conduit contributions and reimbursed conduits for their contributions with

cash and corporate or personal funds.    Defendants **ACEVEDO VILA, FELDMAN,**

**NEGRON MELLA** and **AVANZATO** did so to reduce the Committee's significant campaign

debt and to fund future campaigns.

g.      Defendants **NEGRON MELLA** and **AVANZATO** directed their employees,

friends, and family members to give campaign contributions to the Committee, and then

reimbursed the conduits for the full amount of their campaign contributions.  Defendants

**NEGRON MELLA** and **AVANZATO** effected the reimbursements through their

corporations or businesses.

h.      Defendant **VELASCO MELLA** assisted defendants **NEGRON MELLA** and

**AVANZATO** in the collection of the conduit contribution checks.  Defendant **VELASCO**

**MELLA** also often completed the payee portion of these checks.

I.      Defendants **NEGRON MELLA** and **AVANZATO** used corporate bank

accounts and credit cards to disguise and fund the conduits' campaign contributions to the

Committee.  In addition, defendants **NEGRON MELLA** and **AVANZATO** used corporate

bank accounts and credit cards to disguise and pay for expenses, including the payment

of lavish dinners for defendants **ACEVEDO VILA** and **COREANO SALGADO**, related to

the distribution of the conduit campaign  contributions and other matters.

---

j.      Defendants **FELDMAN, NEGRON MELLA** and **AVANZATO** paid for the costs of a fundraiser (either as expenditures or as in-kind contributions) hosted by them for defendant **ACEVEDO VILA** at which defendant **ACEVEDO VILA** received illegal conduit contributions. Defendants **ACEVEDO VILA** and **COREANO SALGADO** did not disclose this fundraiser to regular Philadelphia constituent organizations for the Resident Commissioner's office as a means of further concealing who bore the costs of the fundraiser and the solicitation and receipt of conduit contributions.

k.      Defendant **ACEVEDO VILA** personally participated in the solicitation, receipt, and recording of campaign contributions from defendants **FELDMAN, NEGRON MELLA, AVANZATO** and their associates to his Committee. Defendant **ACEVEDO VILA** also tracked the reduction of the campaign debt and reported back to defendant **FELDMAN** the impact of the "Philadelphia" campaign contributions upon the reduction in that campaign debt.

l.      Defendants **FELDMAN, NEGRON MELLA**, and **AVANZATO** used the "Philadelphia" campaign contributions and unreported lavish dinners for defendant **ACEVEDO VILA** and **COREANO SALGADO** to gain access to and influence with defendant **ACEVEDO VILA** and his office and staff in Washington, DC and in San Juan, Puerto Rico. Defendants **FELDMAN, NEGRON MELLA**, and **AVANZATO** did so to further their business interests and the interests of their clients.

m.      Defendant **ACEVEDO VILA** in turn contacted, and caused members of his staff, including defendants **COREANO SALGADO** and **INCLAN BIRD**, to contact local

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 12**

government agency representatives and otherwise provide assistance to defendants **FELDMAN, NEGRON MELLA,** and **AVANZATO** and their business clients during the time that defendant **ACEVEDO VILA** accepted conduit and other contributions from them. Defendant **ACEVEDO VILA** did so to encourage and promote the future solicitation and receipt of "Philadelphia" campaign contributions in order to reduce the sizable campaign debt and fund future campaigns.

n.     Defendant **ACEVEDO VILA** and others concealed and caused to be concealed the true form and nature of the conduit, excessive and corporate contributions from the FEC. Defendant **ACEVEDO VILA** and others also concealed and caused to be concealed the payments of the dinners and other benefits from required reports, such as annual Financial Disclosure Forms for Resident Commissioners, that would have brought additional scrutiny upon the nature and extent of the true relationship between defendant **ACEVEDO VILA** and defendants **FELDMAN, NEGRON MELLA,** and **AVANZATO**.

o.     After the FEC raised concern about excessive contributions received from certain contributors from Philadelphia and indicated that refunds would be required, defendant **ACEVEDO VILA** and the Committee provided refunds directly to defendant **NEGRON MELLA** instead of to the named contributors, who in fact were conduits. Defendant **ACEVEDO VILA** and the Committee only refunded those conduit contributions controlled by defendant **NEGRON MELLA**, who in turn immediately converted the refunded conduit contributions into contributions for another campaign supported by him and defendant **FELDMAN**. The Committee subsequently falsely reported to the FEC that

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 13**

additional refunds in fact had been made, when in truth and in fact those additional refunds had not been made.

p.     Defendants **VELASCO MELLA, VELASCO ESCARDILLE, COLON RODRIGUEZ** and various others made various false statements to the FEC and the Federal Bureau of Investigation in order to continue to conceal the illegal nature of the collaborator and conduit contribution scheme discussed above.

## OVERT ACTS

### Puerto Rico Collaborator Contributions

6.     In or about September 1999, defendant **VELASCO ESCARDILLE** and others known and unknown to the Grand Jury had a conversation with Person A, who was a representative of Company A, and advised Person A that the Committee would use a system of collaborators to pay the Committee's debt with Company A.

7.     Beginning in or about September 1999, and lasting through in or about August 2000, defendant **VELASCO ESCARDILLE** received the first of numerous fake invoices from Person A to deliver to Committee collaborators.

8.     Between in or about September 1999 through in or about August 2000, defendant **VELASCO ESCARDILLE** worked with Person A to transfer a portion of the Committee's debt with Company A to a miscellaneous account, which Company A had established to track the fake invoices sent to and payments received by the collaborators, as Company A received payments from the collaborators.

9.     Beginning in or about September 1999 and lasting through in or about August

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 14**

2000, defendants **VELASCO ESCARDILLE** and **COLON RODRIGUEZ** had the first of numerous meetings with Person A in order to discuss the finances of the campaign and the collaborators' payments to Company A.

      10.    In or about July 2001, defendant **COLON RODRIGUEZ** prepared a handwritten list of topics related to the campaign, including the matter of the "collaborators."

      11.    On or about the dates listed below, Company A received payments from the collaborators and applied those payments to the Committee's debt with Company A as follows:

| OVERT ACT # | COLLABORATOR | DATE OF CONTRIBUTION | AMOUNT |
|---|---|---|---|
| 11 a | CLB 1 | 10/29/99 | $ 5,000 |
| 11 b | CLB 2 | 11/01/99 | $ 10,000 |
| 11 c | CLB 3 | 11/09/99 | $ 12,500 |
| 11 d | CLB 4 | 01/03/00 | $ 20,000 |
| 11 e | CLB 4 | 11/15/99 | $ 20,000 |
| 11 f | CLB 5 | 05/25/00 | $ 40,000 |
| 11 g | CLB 6 | 11/04/99 | $ 2,000 |
| 11 h | CLB 7 | 11/03/99 | $ 3,000 |
| 11 I | CLB 8 | 11/10/99 | $ 1,000 |
| 11 j | CLB 9 | 11/12/99 | $ 5,000 |
| 11 k | CLB 10 | 11/03/99 | $ 6,000 |
| 11 l | CLB 11 | 11/03/99 | $ 5,000 |
| 11 m | CLB 12 | 11/19/99 | $ 10,000 |

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 15**

| 11 n | CLB 13 | 09/11/99 | $  2,000 |
|------|--------|----------|----------|
| 11 o | CLB 14 | 02/29/00 | $  5,000 |
| 11 p | CLB 15 | 06/13/00 | $  7,500 |
| 11 q | CLB 15 | 04/14/00 | $  5,000 |
| 11 r | CLB 15 | 06/29/00 | $  7,500 |
| 11 s | CLB 15 | 08/15/00 | $  5,000 |
| 11 t | CLB 15 | 08/18/00 | $  5,000 |
| 11 u | CLB 16 | 05/08/00 | $    500 |
| 11 v | CLB 17 | 07/28/00 | $  5,000 |
|      | **TOTAL** |       | **$182,000** |

12.     On or about the dates more specifically described below, defendant

**VELASCO ESCARDILLE** filed and caused to be filed with the FEC false reports that

omitted the collaborator contributions made to the Committee during the years 1999 and

2000 and misrepresented the Committee's debt with Company A through the year 2002

as follows:

| OVERT ACT # | REPORT | DATE FILED | PERIOD COVERED |
|-------------|--------|-----------|----------------|
| 12 a | Pre-primary | 11/02/1999 | 07/01/1999 - 10/25/1999 |
| 12 b | Year- End for 1999 | 02/08/2000 amended 02/09/2000 amended 07/28/2000 amended 02/01/2001 | 10/26/1999 - 12/31/1999 |
| 12 c | April Quarterly | 04/15/2000 | 01/01/2000 - 04/31/2000 |
| 12 d | July Quarterly | 07/15/2000 amended 07/28/2000 amended 01/31/2001 amended 02/01/2001 | 04/01/2000 - 06/30/ 2000 |

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 16**

| 12 e | October Quarterly | 10/14/2000 amended 02/07/2001 | 07/01/2000 - 09/30/2000 |
|------|-------------------|-------------------------------|-------------------------|
| 12 f | Pre-General | 10/23/2000 amended 02/07/2001 | 10/01/2000 - 10/18/2000 |
| 12 g | Post-General | 12/07/2000 amended 02/07/2001 amended 03/14/2001 | 10/19/2000 - 11/27/2000 |
| 12 h | Year-End | 01/31/2001 amended 02/07/2001 | 11/28/2000 - 12/31/2000 |
| 12 I | Mid-Year | 08/01/2001 amended 08/01/2001 | 01/01/2001 - 06/30/2001 |
| 12 j | Year-End | 01/31/2002 | 07/01/2001 - 12/31/2001 |
| 12 k | July 31 Mid-Year | 08/01/2002 | 01/01/2002 - 06/30/2002 |
| 12 I | January 31 Year-End | 01/31/2003 | 07/01/2002 - 12/31/2002 |

13.     Counts Eight and Nine of this Indictment are realleged and incorporated herein by reference as if fully set forth herein, as in substance constituting overt acts of this conspiracy.

### Family and Staff Contributions

14.     On or about September 24, 2001,  defendant **ACEVEDO VILA** caused cash in the approximate amount of $1,500 to be provided to at least two family members of his, in order to fund conduit contributions to his Committee.

15.     On or about September 27, 2001,  defendant **ACEVEDO VILA** caused cash in the approximate amount of $2,500 to be provided to a family member of his, in order to fund conduit contributions to his Committee.

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 17**

16.    On or about March 15, 2002, defendant **ACEVEDO VILA** caused cash in the approximate amount of $2,000 to be provided to at least two family members of his, in order to fund conduit contributions to his Committee.

17.    On or about March 28, 2002, defendant **ACEVEDO VILA** provided a family member of his with approximately $1,500 dollars in cash, and requested the family member to provide two conduit contribution checks aggregating the same amount.

18.    On or about October 12, 2001, a conduit contribution check in the amount of $500, was requested from and issued by Person B, a member of defendant **ACEVEDO VILA**'s staff, for which he was reimbursed approximately three weeks later.

19.    On or about October 6, 2001, defendant **INCLAN BIRD** requested that Person C, a member of defendant **ACEVEDO VILA**'s staff, provide her with two campaign contribution checks in the collective amount of $1,000 as a favor to defendant **ACEVEDO VILA**, promising to fully reimburse Person C for the amount of the contributions.

20.    On or about October 12, 2001, defendant **INCLAN BIRD** provided Person C with $1,000 in cash as a reimbursement for the prior campaign contributions paid by Person C and her mother.

21.    On or about December 28, 2002, defendant **ACEVEDO VILA** caused cash in the approximate amount of $750 to be provided to a family member of his in order to fund conduit contributions to his Committee.

22.    On or about the dates specified below, defendant **VELASCO ESCARDILLE** and defendant **COLON RODRIGUEZ** filed and caused to be filed with the FEC the

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 18**

following FECA reports, which falsely stated that campaign contributions had been made

by staff members of the Committee and family members of defendant **ACEVEDO VILA**,

when, in fact, those conduit contributors had been reimbursed with cash by defendants

**ACEVEDO VILA** and **INCLAN BIRD**:

| OVERT ACT # | REPORT | DATE FILED | PERIOD COVERED |
|---|---|---|---|
| 22 a | 2001 Year-end | 01/31/2002 | 07/01/2001 - 12/ 31/ 2001 |
| 22 b | 07/31/2002 Mid-Year | 08/01/2002 amended 08/01/2002 | 01/01/2002 - 06/30/2002 |
| 22 c | 2002 Year-end | 01/31/ 2003 | 07/01/2002 - 12/31/2002 |

### The Philadelphia Contributions

23.     In or about January 2002, defendants **NEGRON-MELLA**, **AVANZATO,** and

**FELDMAN**,    met at the offices of defendant **NEGRON-MELLA** in Philadelphia,

Pennsylvania, in order to discuss the upcoming fundraiser for the Resident Commissioner

Committee and their support of the Resident Commissioner.

24.     During this meeting, defendants **NEGRON-MELLA,  AVANZATO**, and

**FELDMAN** discussed the need to maximize campaign contributions at the February 2002

fundraiser for the Committee in order to impress defendant **ACEVEDO VILA**, and thereby

promote their business interests in Puerto Rico.

25.     In this meeting, during a discussion about federal election campaign limits,

defendant **FELDMAN** suggested that it would be necessary for defendants **NEGRON-**

**MELLA** and **AVANZATO** to obtain conduit contribution checks from third parties, including

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 19**

their family members, in order to circumvent federal election campaign limits and maximize

the amount of money that they could contribute to the Committee.

26.     In or about January 2002, defendant **COREANO SALGADO** provided

assistance to defendants **NEGRON MELLA**, **AVANZATO**, and **FELDMAN** in connection

with their interest in securing a Medicaid dental contract with the Commonwealth of Puerto

Rico.

27.     On January 10, 2002, defendant **FELDMAN** hosted a breakfast meeting for

defendant **ACEVEDO VILA** in Philadelphia, Pennsylvania, at a local hotel in order to

introduce him  to various Philadelphia businessmen interested in exploring business

opportunities in Puerto Rico.

28.     On February 7, 2002, defendants **NEGRON-MELLA, AVANZATO**, and

**FELDMAN** hosted a fundraiser for defendant **ACEVEDO VILA** in Philadelphia,

Pennsylvania.

29.     Between on or about February 1, 2002,  through on or about  February 7,

2002, the date of the fundraiser, defendants **NEGRON-MELLA** and **AVANZATO** obtained

conduit contribution checks totaling in excess of $40,000 from their employees, family

members, and friends, all of whom defendants **NEGRON MELLA** and **AVANZATO**

reimbursed for the full amount of the contributions.

30.     On or about February 7, 2002, defendant **ACEVEDO VILA** accepted an

envelope containing the conduit and other contributions from defendant **NEGRON MELLA**

at the conclusion of the fundraiser.

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 20**

31.    On or about February 7, 2002, defendant **FELDMAN** wrote a personal check in the amount of $6,000 payable to the "Comité Aníbal Vila", for which defendant **NEGRON MELLA** later reimbursed him on the same date.

32.    On or about February 8, 2002, defendants **NEGRON MELLA** and **AVANZATO** paid $2,484 to a hotel, known to the Grand Jury, in Philadelphia, Pennsylvania, for the cost of the fundraiser for defendant **ACEVEDO VILA**.

33.    Between on or about February 8, 2002, through on or about April 29, 2003, defendants **NEGRON MELLA** and **AVANZATO** solicited and received approximately $100,000 in additional conduit contributions from many of the same employees, family members, and friends who had previously contributed.

34.    In or about March, 2002, defendant **ACEVEDO VILA** contacted the director of the Office of Management and Budget ("Oficina de Gerencia y Presupuesto"), a government agency in  Puerto Rico which assisted and provided guidance to the government in the use and management of public resources, in order to request that the director meet  with representatives from Company B, a Philadelphia company associated with defendant **FELDMAN**.

35.    Sometime between May, 2002 and October, 2002, defendant **ACEVEDO VILA** caused a senior member of his staff at the Resident Commissioner's Office to contact a Special Aide to the director of the Office of Management and Budget in order to endorse Company B for a contract with that agency.

36.    In or about December, 2002, defendant **MARVIN I. BLOCK** enlisted an

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 21**

additional conduit contributor on behalf of defendant **NEGRON MELLA** and delivered a

reimbursement check to the conduit from defendant **NEGRON MELLA**.

37.    On or about December 15, 2002, defendant **MARVIN I. BLOCK** wrote a

check in the amount of $3,000 payable to "Anibel Aciveda Vela Comitee" (sic), for which

defendant **NEGRON MELLA** later reimbursed him.

38.    In the year 2002, defendants **NEGRON MELLA** and **AVANZATO** caused

approximately $97,000 in conduit contributions to be made to the Committee on the dates

and in the amounts as more specifically set forth below:

| OVERT ACT # | CONDUIT | DATE | AMOUNT |
|---|---|---|---|
| 38 a | JL | 02/05/2002 | $ 3,000 |
| 38 b | AL | 02/05/2002 | $ 3,000 |
| 38 c | MLM | 02/05/2002 | $ 3,000 |
| 38 d | SAM | 02/05/2002 | $ 3,000 |
| 38 e | MOT | 02/05/2002 | $ 3,000 |
| 38 f | JDO | 02/05/2002 | $ 3,000 |
| 38 g | JLO | 02/05/2002 | $ 3,000 |
| 38 h | JORGE VELASCO MELLA | 02/06/2002 | $ 3,000 |
| 38 I | CM | 02/06/2002 | $ 2,000 |
| 38 j | ET | 02/06/2002 | $ 3,000 |
| 38 k | GC | 02/06/2002 | $ 3,000 |
| 38 I | SA | 02/07/2002 | $ 3,000 |
| 38 m | ROBERT M. FELDMAN | 02/07/2002 | $ 3,000 |
| 38 n | AF | 02/07/2002 | $ 3,000 |
| 38 o | SVA | 03/20/2002 | $ 3,000 |

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 22**

| 38 p | TM | 06/24/2002 | $ 2,000 |
|------|-----|-----------|---------|
| 38 q | SW | 07/10/2002 | $ 3,000 |
| 38 r | AF | 07/11/2002 | $ 3,000 |
| 38 s | RM | 07/11/2002 | $ 3,000 |
| 38 t | RA | 07/23/2002 | $ 3,000 |
| 38 u | HB | 07/23/2002 | $ 3,000 |
| 38 v | ED | 07/23/2002 | $ 3,000 |
| 38 w | BO | 07/23/2002 | $ 3,000 |
| 38 x | KM | 07/23/2002 | $ 3,000 |
| 38 y | AO | 09/10/2002 | $ 3,000 |
| 38 z | JR | 09/10/2002 | $ 3,000 |
| 38 aa | ATT | 09/10/2002 | $ 3,000 |
| 38 ab | AB | 09/15/2002 | $ 3,000 |
| 38 ac | RK | 09/19/2002 | $ 3,000 |
| 38 ad | BM | 11/12/2002 | $ 3,000 |
| 38 ae | TM | 11/12/2002 | $ 3,000 |
| 38 af | MB | 12/12/2002 | $ 3,000 |
| 38 ag | **MARVIN I. BLOCK** | 12/15/2002 | $ 3,000 |
|  | **TOTAL** |  | **$97,000** |

39.     In the year 2003, defendants **NEGRON MELLA** and **AVANZATO** caused

approximately $39,000 in conduit contributions to be made to the Committee on the dates

and in the amounts as more specifically set forth below:

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 23**

| OVERT ACT # | CONDUIT | DATE | AMOUNT |
|---|---|---|---|
| 39 a | MNR | 02/12/2003 | $ 4,000 |
| 39 b | SA | 02/13/2003 | $ 1,000 |
| 39 c | RA | 02/13/2003 | $ 1,000 |
| 39 d | HB | 02/13/2003 | $ 1,000 |
| 39 e | AL | 02/13/2003 | $ 2,000 |
| 39 f | CM | 02/13/2003 | $ 1,000 |
| 39 g | SAM | 02/13/2003 04/29/2003 | $ 2,000 $ 2,000 |
| 39 h | TM | 02/12/2003 06/28/2003 | $ 1,000 $ 1,000 |
| 39 I | VO | 02/13/2003 | $ 1,000 |
| 39 j | JR | 02/12/2003 | $ 1,000 |
| 39 k | GC | 02/12/2003 | $ 2,000 |
| 39 I | KM | 02/12/2003 04/28/2003 | $ 1,000 $ 1,000 |
| 39 m | MOT | 02/13/2003 03/24/2003 | $ 1,000 $ 1,000 |
| 39 n | JORGE VELASCO MELLA | 02/13/2003 03/26/2003 | $ 1,000 $ 1,000 |
| 39 o | SW | 02/13/2003 | $ 1,000 |
| 39 p | JL | 03/24/2003 | $ 2,000 |
| 39 q | BL | 03/24/2003 | $ 2,000 |
| 39 r | FK | 04/29/2003 | $ 4,000 |
| 39 s | JDO | 02/13/2003 | $ 2,000 |
| 39 t | JLO | 04/29/2003 | $ 2,000 |
| | TOTAL | | $39,000 |

40.     In or about January, 2003, defendant **ACEVEDO VILA** contacted the director

of the Puerto Rico Housing Department, ("Departamento de Vivienda"), a Puerto Rico government agency, to ask the director to meet with representatives of Company C, a business client of defendant **FELDMAN**, and advised the director that Company C was helping him with his campaign.

41.     On or about January 27, 2003, defendant **NEGRON MELLA** provided defendant **COREANO SALGADO**, upon her request, with the requested employment information on certain conduit contributors.

42.     On or about January 29, 2003, defendant **NEGRON MELLA**, upon request of defendant **COREANO SALGADO**, provided her with additional employment information on the conduits to be included in the report the Committee would file with the FEC.

43.     On or about June 26, 2003, defendant **ACEVEDO VILA** caused nine refund checks for conduits who had contributed to the Committee to be delivered to defendant **NEGRON MELLA**, each of which were made payable to conduits who previously had been re-imbursed by defendant **NEGRON MELLA**.

44.     Within the next several days, defendant **NEGRON MELLA** caused the refund checks to be provided to each of the conduits, and then directed the conduits to "flip" those checks to another candidate supported by defendants **NEGRON MELLA** and **FELDMAN.**

45.     In or about September or October, 2003, defendant **ACEVEDO VILA** caused defendant **INCLAN BIRD** to assist defendant **NEGRON MELLA** in coordinating a meeting with the director of the Puerto Rico Pension Fund for Company D, a business client of defendant **NEGRON MELLA.**

46.     On or about November 17, 2003, defendant **NEGRON MELLA** emailed

defendant **COREANO SALGADO** requesting that she follow up on at least four requests

for assistance relating to his own business interests or the interests of clients of defendant

**FELDMAN** and various Puerto Rico government agencies.

     47.    On or about the dates more specifically described below, defendant

**VELASCO ESCARDILLE** and defendant **COLON RODRIGUEZ** filed and caused to be

filed with the FEC the following false FECA reports, which stated that the contributions

personally hand-delivered to defendant **ACEVEDO VILA** by defendant **NEGRON MELLA**

in fact had been made by the conduits, when, as defendants **ACEVEDO VILA, NEGRON**

**MELLA, AVANZATO, FELDMAN, VELASCO MELLA,** and **COREANO SALGADO** well

knew, the contributions had been made by defendant **NEGRON MELLA** and corporations

owned by defendants **NEGRON MELLA** and **AVANZATO**:

| OVERT ACT # | REPORT | DATE FILED | PERIOD COVERED |
|---|---|---|---|
| 47 a | July 31 Mid-Year | 08/01/02 | 01/01/02 - 06/30/02 |
| 47 b | January 31 Year-End | 01/31/03 | 07/01/02 - 12/31/02 |
| 47 c | April Quarterly | 04/15/03, amended 05/10/04 | 01/01/03 - 03/31/02 |
| 47 d | July Quarterly | 07/15/03, amended 07/17/03, amended 03/12/04, amended 05/10/04 | 04/01/03 - 06/30/03 |
| 47 e | Termination Report | 05/10/04 | 04/01/04 - 05/05/04 |

     48.    On or about July 31, 2002, defendant **ACEVEDO VILA** caused the $2,484

payment to the Philadelphia hotel for the February 7, 2002 fundraiser to be omitted by the

Committee from the July 31 Mid-Year Report filed with the FEC.

      49.    Counts Five through Seven of this Indictment are realleged and incorporated

herein by reference as if fully set forth herein, as in substance constituting overt acts of this

Conspiracy.

      All in violation of Title 18, United States Code, Section 371.

### COUNT TWO

#### False Statements to the Federal Election Commission
#### Title 18, United States Code, Sections 1001(a)(2), 2

      On or about April 15, 2003, in the District of Puerto Rico and elsewhere, the

defendants,

**[1] ANIBAL ACEVEDO VILA,**
**[2] CANDIDO NEGRON-MELLA**
**and**
**[4] JORGE VELASCO MELLA,**

together with others known and unknown to the Grand Jury, aiding and abetting each

other, knowingly and willfully caused Ramón Velasco Escardille, not charged herein, to

make materially false, fictitious, and fraudulent statements and representations in a matter

within the jurisdiction of the Federal Election Commission, to wit:  that contributions made

to the Comité Acevedo Vilá Comisionado 2000, Inc., as reflected in the April 2003

Quarterly Report dated April 15, 2003, were made by KM, HB, RA, TM, SA, MOT, JDO,

CM, AL, JR, GC, SW, SAM, and **JORGE VELASCO MELLA**, when in truth and in fact, as

the defendants well knew, the statements were false in that said contributions had not

been made by the reported contributors, and had instead been made by defendant

**CANDIDO NEGRON MELLA** and another person known to the Grand Jury, through them

as conduits, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT THREE

### False Statements to the Federal Election Commission
### Title 18, United States Code, Sections 1001(a)(2), 2

On or about July 15, 2003, in the District of Puerto Rico and elsewhere, the

defendants,

**[1] ANIBAL ACEVEDO VILA,**
**[2] CANDIDO NEGRON-MELLA**
**and**
**[4] JORGE VELASCO MELLA,**

together with others known and unknown to the Grand Jury, aided and abetted by one

another, knowingly and willfully caused Ramón Velasco Escardille, not charged herein, to

make materially false, fictitious, and fraudulent statements and representations in a matter

within the jurisdiction of the Federal Election Commission, to wit: that contributions made

to the Comité Acevedo Vilá Comisionado 2000, Inc., as reflected in the July 2003 Quarterly

Report dated July 15, 2003, were made by SA, JLO, MOT, MM, JDO, RK, KM, TM, FK, JL,

BL, and **JORGE VELASCO MELLA**, when in truth and in fact, as the defendants well

knew, the statements were false in that said contributions had not been made by the

reported contributors, and had instead been made by defendant **CANDIDO NEGRON**

**MELLA** and another person known to the Grand Jury, through them as conduits, in

violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT FOUR

### False Statements to Federal Agents
### Title 18, United States Code, Section 1001(a)(2)

1.      The United States Department of Justice was an executive department of the
United States government. The Department of Justice controlled criminal prosecutions
and civil suits in which the United States had an interest, and had control over federal law
enforcement.

2.      The Federal Bureau of Investigation (also referred to as "FBI") was the
investigative arm of the United States Department of Justice.    At times material to this
Superseding Indictment, the FBI was conducting an investigation focusing on the activities
of the Committee and individuals associated with the Resident Commissioner campaign
for Aníbal Acevedo Vilá.

3.      On or about March 26, 2006, in the District of Puerto Rico and elsewhere,
the defendant,

### [4] JORGE VELASCO MELLA,

in a matter within the jurisdiction of the executive branch of Government of the United
States, knowingly and willfully made a materially false, fictitious, and fraudulent statement
and representation, in that the defendant advised Special Agents of the Federal Bureau
of Investigation, during an interview in which he was questioned regarding contributions he
made to the Comité Acevedo Vilá Comisionado 2000, Inc., that no request had ever been
made of him to collect money or checks from others for campaign donations, and that he
did not know of anyone else who donated money to the Resident Commissioner Campaign

of Aníbal Acevedo Vilá, when in truth and in fact, as the defendant then and there well

knew, he had been asked to collect money and checks from conduit contributors for the

Comité Acevedo Vilá Comisionado 2000, Inc. by the defendants, and he knew that

Cándido Negrón Mella and Salvatore Avanzato, not charged herein, were financing the

contributions. All in violation of Title 18, United States Code, Section 1001(a)(2).

### COUNT FIVE

### False Statements to the Federal Election Commission
### Title 18, United States Code, Section 1001(a)(2)

1.      Between on or about July 8, 2003, through on or about June 15, 2004, the

FEC sent various Requests for Additional Information to defendant **RAMON VELASCO**

**ESCARDILLE** notifying the Committee that contributions in excess of the quantitative limits

allowed by law had been reported by the Committee to the FEC, and directing that prompt

action be taken to refund, redesignate or reattribute the excessive amount.

2.      On or about July 15, 2003, in the District of Puerto Rico and elsewhere, the

defendant,

### [7] RAMON VELASCO ESCARDILLE,

knowingly and willfully made a materially false, fictitious and fraudulent statement and

representation in a matter within the jurisdiction of the Federal Election Commission, to wit:

he stated in the July Quarterly Report, dated July 15, 2003, that refunds of contributions

totaling $19,000 had been made to sixteen contributors by  the "Comité Acevedo Vilá

Comisionado 2000, Inc." at the Federal Election Commission's request, when in truth and

in fact, the defendant well knew that the statement was false in that the Committee had

refunded only $11,000 to eight contributors, in violation of Title 18, United States Code, Section1001(a)(2).

### COUNT SIX

#### False Statements to the Federal Election Commission
#### Title 18, United States Code, Section 1001(a)(2)

1.      Between on or about July 8, 2003, through on or about June 15, 2004, the FEC sent various Requests for Additional Information to defendant **RAMON VELASCO ESCARDILLE** notifying the Committee that contributions in excess of the quantitative limits allowed by law had been reported by the Committee to the FEC, and directing that prompt action be taken to refund, redesignate or reattribute the excessive amount.

2.      On or about May 11, 2004, in the District of Puerto Rico and elsewhere, the defendant,

#### [7] RAMON VELASCO ESCARDILLE,

knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the Federal Election Commission, to wit: he stated in the Amended April Quarterly Report, covering the period of January 2003 through March 2003, and dated May 11, 2004, that refunds of contributions totaling $21,000 had been made to twenty-one contributors by the "Comité Acevedo Vilá Comisionado 2000, Inc." at the FEC's request, when in truth and in fact, the defendant well knew that the statement was false in that the Committee had not refunded any money to any contributors, in violation of Title 18, United States Code, Section1001(a)(2).

## COUNT SEVEN

### False Statements to the Federal Election Commission
### Title 18, United States Code, Section 1001(a)(2)

1.      Between on or about July 8, 2003, through on or about June 15, 2004, the Federal Election Commission sent various Requests for Additional Information to defendant **RAMON VELASCO ESCARDILLE** notifying the Committee that contributions in excess of the quantitative limits allowed by law had been reported by the Committee to the FEC, and directing that prompt action be taken to refund, redesignate or reattribute the excessive amount.

2.      On or about May 11, 2004, in the District of Puerto Rico and elsewhere, the defendant,

### [7] RAMON VELASCO ESCARDILLE,

knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the Federal Election Commission, to wit: he stated in the Termination Report, dated May 11, 2004, that refunds of contributions totaling $10,000 had been made to seven contributors by the "Comité Acevedo Vilá Comisionado 2000, Inc." at the Federal Election Commission's request, when in truth and in fact, the defendant well knew that the statement was false in that the Committee had not refunded any money to any contributors, in violation of Title 18, United States Code, Section1001(a)(2).

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 32**

## COUNT EIGHT

### False Statements to the Federal Election Commission
### Title 18, United States Code, Section 1001(a)(1)

1.      Paragraphs five (a) through (c) and six through twelve of Count One of this indictment are incorporated as if fully alleged herein.

2.      Beginning in approximately January 2001, and continuing through approximately December 2003, the Federal Election Commission was conducting an administrative enforcement proceeding against the Comité Acevedo Vilá Comisionado 2000, Inc., and others.   The Commission was focusing on various issues in this enforcement proceeding, including the following: (a) the quantitative size of an extension of credit which had been given to the Comité Acevedo Vilá Comisionado 2000, Inc. by Company A; (b) whether Company A had pursued a collection of an outstanding indebtedness in a matter consistent with normal business practices; (c)  whether the extension of credit was within the normal course of business; (d) whether the relationship between Company  A and the Comité Acevedo Vilá Comisionado 2000, Inc. was lawful under the Federal Election Campaign Act, and in particular the prohibition on corporate contributions (2 USC 441b); and (e)  whether the payment for services rendered by Company A was lawful under the Federal Election Campaign Act, and in particular the prohibition on corporate contributions (2 USC 441b).

3.      On or about April 4, 2003, in the District of Puerto Rico and elsewhere, defendants,

### [7] RAMON VELASCO ESCARDILLE
### and

---

### [8] EDWIN COLON RODRIGUEZ,

in the matter referred to in paragraph two of this count, knowingly and willfully falsified, concealed, and covered up by trick, scheme, and device a material fact, that is, that a sizeable portion of the debt owed to Company A had not been reported to the FEC and was not yet paid off in full, and that portions of that unreported debt which had been paid, had been paid surreptitiously through contributions made by individuals and businesses known to the Grand Jury, in violation of the limits imposed on contributions by the Federal Election Campaign Act, and the prohibition on corporate contributions contained in the Federal Election Campaign Act, in violation of Title 18, <u>United States Code</u>, Section 1001(a)(1).

### COUNT NINE

#### False Statements to the Federal Election Commission
#### Title 18, <u>United States Code</u>, Section 1001(a)(2)

1.      At times material to this Indictment, a company known to the Grand Jury, hereinafter referred to as Company F, was an advertising firm operating in Puerto Rico, which provided media services to the Committee.

2.      On or about January 31, 2003, in the District of Puerto Rico, defendant,

### [7] RAMON VELASCO ESCARDILLE,

knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in a matter within the jurisdiction of the Federal Election Commission, to wit, falsely stating in the January 31, 2003 Year-End Report for 2002, that only twelve recipients received reportable disbursements from the campaign, for a certain total sum,

when in truth and in fact, as the defendant well knew, the Comité Acevedo Vilá
Comisionado 2000, Inc (the Committee) had made an additional $12,000 cash payment
to an unreported recipient ("Company F") in the relevant period, in violation of Title 18,
United States Code, Section 1001(a)(2).

### GENERAL ALLEGATIONS APPLIED TO COUNTS TEN THROUGH TWENTY-FIVE

### Relevant Entities and Individuals Involved

1.      The Puerto Rico Treasury Department ("Departamento de Hacienda") was
a department of the Executive branch of government of the Commonwealth of Puerto Rico.
The affairs of the Puerto Rico Treasury Department were supervised by its Secretary, a
cabinet level position. The Puerto Rico Treasury Department developed and implemented
fiscal and tax-related policy for the Commonwealth of Puerto Rico, and promoted fiscal
stability for the social and economic well-being of the Island.

2.      The Government Development Bank (hereinafter "the Bank") was the fiscal
agent and financial advisor of the central government and its agencies. The Bank's
primary functions were to act as fiscal agent and financial advisor for the Commonwealth
and its agencies, and to provide financing mechanisms to both public entities and private
enterprises in order to further the island's economic development.

3.      The State Electoral Commission for the Commonwealth of Puerto Rico
("Comisión Estatal de Elecciones")(hereinafter "the Commission") had the responsibility for
planning, organizing, structuring, directing and supervising the electoral process in the
Commonwealth of Puerto Rico. Political parties and candidates in Puerto Rico were
required to file periodic reports with the Commission, under penalty of perjury, providing

accurate information regarding contributions received and expenditures made within the scope of the reporting cycle.

4.      The "Comité Aníbal 2004, Inc." (hereinafter referred to as "Comité Aníbal") was a Political committee that defendant **ANIBAL ACEVEDO VILA** (hereinafter "defendant **ACEVEDO VILA**") authorized to serve as his principal campaign committee in connection with his 2004 campaign for Governor of the Commonwealth of Puerto Rico.   Defendant **ACEVEDO VILA** officially announced his candidacy for governor of the Commonwealth of Puerto Rico on July 24, 2003, while still serving as Resident Commissioner.   The Commission certified his candidacy on August 14, 2003. Defendant **ACEVEDO VILA** was elected governor of the Commonwealth of Puerto Rico on or about November 2, 2004, and the results of the election were certified on or about December 28, 2004.   Defendant **ACEVEDO VILA** was sworn in as governor on or about January 2, 2005.

5.      Defendant **LUISA INCLAN BIRD** (hereinafter "defendant **INCLAN BIRD**") worked in the Finance Department for the Comité Aníbal. Defendant **INCLAN BIRD** was closely involved with fund-raising efforts on behalf of the campaign, and handled cash contributions for the campaign.

6.      Defendant **MIGUEL NAZARIO FRANCO** (hereinafter "defendant **NAZARIO FRANCO**") was the Director of the Finance Department for the Comité Aníbal.

7.      Defendant **RICARDO COLON PADILLA**  (hereinafter "defendant **COLON PADILLA**") was the Director of Finance for  the political party associated with Comité Aníbal. Defendant **COLON PADILLA** handled the financial affairs of Comité Aníbal, and provided periodic financial reports to defendants **NAZARIO FRANCO** and **INCLAN BIRD**

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 36**

and others.

8.  Defendant **JOSE GONZALEZ FREYRE** (hereinafter "defendant **GONZALEZ FREYRE**") was the president and owner of Pan American Grain, a corporation incorporated in the Commonwealth of Puerto Rico, and dedicated to the wholesale distribution of rice and other food products in Puerto Rico.

9.  Company A was a public relations and media production firm operating in San Juan, Puerto Rico that had performed services for defendant **ACEVEDO VILA**'s previous Resident Commissioner campaigns. Company E was a corporation affiliated with Company A. Common principals owned and controlled Company A and Company E. Company E was a separate corporate entity used to provide advertising and media production services for Comité Aníbal and to separate the account payables and receivables relating to the campaign for Governor of the Commonwealth of Puerto Rico from other Company A business.

### Commonwealth of Puerto Rico Law 4, as Amended by Law 115

10. On April 25, 2003, Public Law 4 was amended by Law 115, which provided, *inter alia* and in sum and substance that candidates for Governor of the Commonwealth of Puerto Rico and their party could choose to participate in a "voluntary fund" providing for public campaign financing. The Puerto Rico Treasury Department held and managed the voluntary fund.

11. To participate in public campaign financing, the candidate had to agree and certify that no more than $4,000,000 would be raised in campaign contributions in the relevant period. In exchange for that agreement, the candidate received $3,000,000

automatically from the Puerto Rico Treasury Department, and up to $4,000,000 more in matching funds for every dollar raised in campaign contributions, thus resulting in as much as $7,000,000 in public funds from the Puerto Rico Treasury Department.

12.     The candidate also had to agree to report and deposit all campaign contributions to the candidate with the Puerto Rico Treasury Department through the filing of periodic official and certified forms.  The Puerto Rico Treasury Department disbursed funds for all campaign expenditures and debts through the filing of periodic official and certified forms by the candidate.

13.     Because the total money available for the campaign could not exceed $11,000,000 (as determined by adding the candidate's maximum $4,000,000 in allowed private campaign contributions plus $7,000,000 in public funds), the campaign could not spend more than $11,000,000.

14.     On or about August 29, 2003, defendant **ACEVEDO VILA** filed a sworn affidavit indicating his decision and agreement to participate in the voluntary fund, in accordance with the provisions of Law 115.

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 38**

## COUNTS TEN THROUGH TWENTY-ONE

### Wire Fraud
### Title 18, United States Code, Section 1343 and 2

1.      From in or about January, 2004 through in or about February, 2005, in the

District of Puerto Rico and elsewhere, the defendants,

**[1] ANIBAL ACEVEDO VILA,**
**[7] RAMON VELASCO ESCARDILLE,**
**[10] LUISA INCLAN BIRD,**
**[11] MIGUEL NAZARIO FRANCO,**
**[12] RICARDO COLON PADILLA,**
**and**
**[13] JOSE GONZALEZ FREYRE,**

and others known and unknown to the Grand Jury, devised and intended to devise a

scheme and artifice to defraud the Commonwealth of Puerto Rico and its agencies,

specifically the Puerto Rico Treasury Department and the State Electoral Commission, and

to retain and obtain money and property to which these agencies were lawfully entitled, by

means of materially false and fraudulent pretenses, representations, and promises, and

for the purpose of executing the scheme and artifice, and attempting to do so, did

knowingly transmit and cause to be transmitted in interstate commerce, by means of wire

communications, certain signs and signals, as more specifically set forth in Counts Ten

through Twenty-One of this Indictment.

### OBJECT OF THE SCHEME

2.      The object of the scheme and artifice to defraud, was for defendant

**ACEVEDO VILA** and Comité Aníbal to obtain public campaign financing from the Puerto

Rico Treasury Department in the approximate amount of $7,000,000 by circumventing

certain legal requirements required by the Commonwealth of Puerto Rico's public campaign financing laws.

### Manner and Means of the Scheme and Artifice to Defraud

3.      The manner and means of the Scheme and Artifice to Defraud included:

a.      Defendants **ACEVEDO VILA, INCLAN BIRD, NAZARIO FRANCO, VELASCO ESCARDILLE,** and **COLON PADILLA,** and others known and unknown to the Grand Jury, caused individuals to pay for the campaign debts and expenses of Comité Aníbal, as described further below, in a manner that avoided the disclosure of those payments in reports required to be filed with the State Electoral Commission and the Puerto Rico Treasury Department.  In doing so, the defendants avoided a paper trail that connected the Comité Aníbal with the payments of these expenses and enabled the defendants to conceal the fact that the $11,000,000 cap on campaign expenditures had been exceeded.   The defendants further concealed the fact that the Comité Aníbal fraudulently induced the Puerto Rico Treasury Department to continue to pay campaign expenses.

b.      Specifically, defendants **ACEVEDO VILA, INCLAN BIRD, NAZARIO FRANCO,** and **VELASCO ESCARDILLE** devised and employed a plan to contact "collaborators" of Comité Aníbal,  and others known and unknown to the Grand Jury who acted on their behalf, in order to solicit contributions for the Comité Aníbal.   The collaborators were directed to issue contribution checks, in many cases from corporations that the collaborators owned and/or controlled, directly to Company E.  Company E in turn credited the payments to a miscellaneous account and applied the payments to the

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 40**

sizeable debt the Comité Aníbal had accrued with the Company E. Company E also used the money to pay campaign debts owed by the Comité Aníbal to other vendors.

        c.     In certain instances, Company E created fake invoices in favor of the collaborator who had issued the contribution check in an attempt to give the transaction the appearance of legitimacy. Company E also created an internal job order and an invoice in order to allow Company E to track disbursements to other vendors on behalf of the Comité Aníbal. In those instances, Company E provided a check to Person D, who was closely connected to Comité Aníbal, for further delivery to the payee. In this manner, Company E applied the collaborators' contributions directly to Comité Aníbal's debt with Company E and with other vendors, and kept the contributions off the books of Comité Aníbal and off any reports filed with the State Electoral Commission and the Puerto Rico Treasury Department. The individual collaborator contributions received in this manner ranged in amounts between $10,000 and $200,000, and resulted in total contributions received by Company E on behalf of the Comité Aníbal in the approximate amount of $720,000.

        d.     Defendant **INCLAN BIRD** authorized cash disbursements in the amount of approximately $456,000, from monies previously received by the Comité Aníbal, and stored in a safety deposit box located in the office of defendant **INCLAN BIRD,** and in a safety deposit box located near the office of defendant **COLON PADILLA** at his office in Puerta de Tierra, Puerto Rico, thereby concealing campaign contributions from the State Electoral Commission and Puerto Rico Treasury Department. Cash was removed periodically from these safety deposit boxes in order to make cash payments directly to

vendors of the Comité Aníbal.  These vendors had rendered *bona fide* services to Comité Aníbal, and thus these cash payments concealed campaign expenditures from the State Electoral Commission and the Puerto Rico Treasury Department.

> e.      Approximately $167,342 in checks drawn on the account of a store in Puerta de Tierra, Puerto Rico (hereinafter "Store A") were also used to pay employees and vendors of the Comité Aníbal.  These employees and vendors also had rendered *bona fide* services to Comité Aníbal, and thus these Store A checks concealed campaign expenditures from the State Electoral Commission and the Puerto Rico Treasury Department.

> f.      Payments to employees and vendors of the Comité Aníbal were also made directly from the Comité Aníbal's bank accounts during the year 2004. Approximately $2,000,000, were omitted from reports to the Puerto Rico Treasury Department, and were not certified to the Puerto Rico Treasury Department as a campaign expense, thereby concealing campaign expenditures from that agency.

> g.      Defendant **INCLAN BIRD** authorized cash payments  to Company E, and defendant **COLON PADILLA**, Person D, and others known to the Grand Jury, periodically delivered those cash payments to Company E.  Company E applied the cash payments against the campaign's unreported debt, thereby concealing campaign expenditures from the State Electoral Commission and the Puerto Rico Treasury Department.

> h.      Defendant **INCLAN BIRD** and others known to the Grand Jury also received cash from campaign fund-raising activities and political contributions, and then

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 42**

selected those vendors of the campaign to whom cash payments should be made without

reporting such contributions or expenditures to the State Electoral Commission and the

Puerto Rico Treasury Department.

### Use of Wires for Execution of the Scheme

4.      On or about the date of each count listed below, in the District of Puerto Rico

and elsewhere, defendants **MIGUEL NAZARIO FRANCO** and **JOSE GONZALEZ**

**FREYRE**, aided and abetted by defendants **ANIBAL ACEVEDO VILA, LUISA INCLAN**

**BIRD, RICARDO COLON PADILLA** and **RAMON VELASCO ESCARDILLE,** for the

purpose of executing and attempting to execute the above-described scheme and artifice

to defraud the Puerto Rico Treasury Department and the State Electoral Commission, and

to retain and obtain money and property to which these agencies were lawfully entitled, by

means of materially false and fraudulent pretenses, representations, and promises,

transmitted and caused to be transmitted by means of wire communications in interstate

commerce, certain writings and signals, as more specifically described below:

| COUNT | DATE | PROVIDER | WIRES |
|-------|------|----------|-------|
| TEN | 02/13/04 | Recipient's provider - Hotmail.com | Electronic mail message from Person A to **MIGUEL NAZARIO FRANCO**, regarding the list of invoices for the Comité Aníbal for the month of January and the current balance of the Comité Aníbal's statement of account.   The subject matter is listed as "AAV." |

**Superseding Indictment**
<u>**United States of America v. Aníbal Acevedo Vilá, et al**</u>
**Page 43**

| ELEVEN | 02/14/04 | Sender's provider - Hotmail.com | Electronic mail message from **MIGUEL NAZARIO FRANCO** to Person A , responding to the electronic mail message contained in Count Ten, and advising that he would contact the employee the following Monday to coordinate a meeting. The subject matter is listed as "AAV." |
|---|---|---|---|
| TWELVE | 02/13/04 | Recipient's provider Hotmail.com | Electronic mail message from Person A to **MIGUEL NAZARIO FRANCO**, with a copy to Person E who was a partner at Company A and E. The message provides a total debt as of January 2004 with Company E of $834,242.46, and $114,707.02. The message also states that Company E only has a promise of payment of $50,000, and that is not enough. The message also reminds **NAZARIO FRANCO** of the due date of reports to the State Electoral Commission. The subject matter is listed as "debt" ("deuda"). |
| THIRTEEN | 02/14/04 | Sender's provider - Hotmail.com | Electronic mail message from **MIGUEL NAZARIO FRANCO** responding to the electronic mail message referenced in Count Twelve, to Person A , and copied to Person E.   **NAZARIO FRANCO** advises that he will call on Monday to schedule a meeting.  The subject matter is listed as "debt" ("deuda"). |
| FOURTEEN | 03/02/04 | Recipient's provider  - Hotmail.com | Electronic mail message from Person A to **MIGUEL NAZARIO FRANCO**, advising that Company E needed a payment and that no payment had been received. The subject matter is listed as "payment" ("pago"). |

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 44**

| FIFTEEN | 03/02/04 | Sender's Provider - Hotmail.com | Electronic mail message from **MIGUEL NAZARIO FRANCO** to a senior management official at Company E, responding to the message referenced in Count Fourteen, advising that **NAZARIO FRANCO** would call the following Friday and ask him to reconcile payments with Ricardo.  The subject is listed as "payments." |
|---|---|---|---|
| SIXTEEN | 3/30/04 | Recipient's provider - Hotmail.com | Electronic mail message from Person A to **MIGUEL NAZARIO FRANCO,** advising that Company E needed a payment and that the promised payment had not been received.  The message further requests **NAZARIO FRANCO** to call.   The subject matter is listed as "payment" ("pago"). |
| SEVENTEEN | 04/28/04 | Recipient's provider - Hotmail.com | Electronic mail message from Person A to **MIGUEL NAZARIO FRANCO**, with a copy to Person E, verifying receipt by **NAZARIO FRANCO** of invoices and statements of account sent by Company E.  Another payment is requested by Company E given the fact that a major media purchase had been made by Company E. The subject matter is listed as "check" ("cheque"). |
| EIGHTEEN | 04/28/04 | Sender's Provider - Hotmail.com | Electronic mail message from **MIGUEL NAZARIO FRANCO**, to Person A , in response to the message referenced in Count Seventeen, regarding payments from the voluntary fund.  **NAZARIO FRANCO** requests that Company E "carry" the campaign for a while.  The subject matter is listed as "checks." |

Superseding Indictment
**United States of America v. Aníbal Acevedo Vilá, et al**
Page 45

| NINETEEN | 05/15/04 | Recipient's provider - Hotmail.com | Electronic mail message from Person A to **MIGUEL NAZARIO FRANCO**, with a copy to Person E. Message advises new statement of account will be sent and that balance is too high and a payment is needed.  The subject matter is listed as "payment" ("abono"). |
| --- | --- | --- | --- |
| TWENTY | 07/04/04 | Recipient's provider - Hotmail.com | Electronic mail message from Person A to **MIGUEL NAZARIO FRANCO**, with a copy to Person E. The message informs **NAZARIO FRANCO** of the pre-billings for television purchases for the month of July and advises that these were sent to **RICARDO COLON PADILLA** for review and further discussion with **NAZARIO FRANCO.** The message requests timely review of the pre-billings so that they could be sent to the Puerto Rico Treasury Department.  The subject matter is listed as "prebillings". |
| TWENTY-ONE | 10/03/04 | Sender's provider AOL.Com | Electronic mail message from **JOSE GONZALEZ FREYRE** to employees of Pan American Grain, directing that two invoices kept on top of his desk, totaling $50,000, be paid. The message further directs an employee of Pan American Grain to call the payee in order to have them pick up the check. The subject is listed as "payment to [Company E] Arroz Valencia study." |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### COUNT TWENTY-TWO

#### PROGRAM FRAUD - OBTAINING MONEY BY FRAUD
#### Title 18, United States Code, Section 666(a)(1)(A) and 2

1.      Between in or about January, 2005, and in or about December, 2005, the Puerto Rico Treasury Department received approximately $331,523 dollars in federal funds as a result of a grant from the United States Department of Justice, under the Law Enforcement Assistance Program funded through the Commonwealth of Puerto Rico Department of Justice. These funds were deposited into the account of the Secretary of the Puerto Rico Treasury Department maintained at the Government Development Bank.

2.      From on or about February 11, 2005, through on or about November 2, 2005, in the District of Puerto Rico, defendant,

#### [1] ANIBAL ACEVEDO VILA,

being an agent of the Commonwealth of Puerto Rico and the Puerto Rico Treasury Department, an agency thereof, said government and agency having received benefits in excess of $10,000 during calendar year 2005, under a Federal program involving a grant, contract, subsidiary, loan, guarantee, insurance, and other form of Federal assistance, aided and abetted by defendants **LUISA INCLAN BIRD, MIGUEL NAZARIO FRANCO,** and **RICARDO COLON PADILLA,** and others known and unknown to the Grand Jury, obtained by fraud property worth at least $5,000 owned by the Commonwealth of Puerto Rico and under the custody and control of the Puerto Rico Treasury Department, that is, approximately $7,000,000 in money from the Voluntary Fund maintained at the Government Development Bank in the account of the Secretary of the Puerto Rico

Treasury Department.  All in violation of Title 18, United States Code, Section 666(a)(1)(A) and 2.

### COUNT TWENTY-THREE

### False Statements to the Federal Bureau of Investigation
### and the Internal Revenue Service
### Title 18, United States Code, Section 1001(a)(2)

1.      The United States Department of Justice was an executive department of the United States government.  The Department of Justice controlled criminal prosecutions and civil suits in which the United States had an interest, and had control over federal law enforcement.

2.      The  Federal Bureau of Investigation (also referred to as "FBI") was the investigative arm of the United States Department of Justice.    At times material to this Superseding Indictment, the FBI was conducting an investigation focusing on the activities of the Comité Aníbal and the contributors  to that gubernatorial campaign.

3.      The United States Department of the Treasury was an executive department of the United States Government.   The Department of the Treasury was the primary federal agency responsible for the economic and financial prosperity and security of the United States.

4.      The Internal Revenue Service was a United States government agency responsible for tax collection and tax law enforcement, and a bureau of the United States Department of the Treasury.

5.      In the years 2004 and 2005, the individual contribution limits established by law in the Commonwealth of Puerto Rico for the gubernatorial election was $1,000 per

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 48**

candidate.

6.  On or about August 8, 2007, in the District of Puerto Rico and elsewhere, defendant,

### [13] JOSE GONZALEZ FREYRE,

in a matter within the jurisdiction of the executive branch of Government of the United States, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation, in that the defendant advised Special Agents of the Federal Bureau of Investigation and the Internal Revenue Service, during an interview in which he was questioned regarding contributions he had made to Comité Aníbal, that the public relations firm of Company E had rendered *bona fide* services to Pan American Grain, and that the payments made by Pan American Grain to Company E in the total amount of $50,000 were in payment of services rendered in connection with a market study the firm performed, when in truth and in fact, as the defendant then and there well knew, Company E had never rendered services to Pan American Grain, and the $50,000 payment to the company was a disguised political contribution to the gubernatorial campaign of Aníbal Acevedo Vilá. All in violation of Title 18, United States Code, Section 1001(a)(2).

### COUNT TWENTY-FOUR

**False Statements to the Federal Bureau of Investigation**
**and the Internal Revenue Service**
**Title 18, United States Code, Section 1001(a)(2)**

1.  Paragraphs one through five of Count Twenty-Three are realleged and incorporated by reference as if fully set forth herein.

2.  On or about October 17, 2007, in the District of Puerto Rico and elsewhere,

defendant,

### [12] RICARDO COLON PADILLA,

in a matter within the jurisdiction of the executive branch of Government of the United

States, knowingly and willfully made a materially false, fictitious, and fraudulent statement

and representation, in that the defendant advised Special Agents of the Federal Bureau

of Investigation and the Internal Revenue Service, during an interview in which he was

questioned regarding the finances and fund-raising activities of the Popular Democratic

Party and the Comité Aníbal during the years 2003 and 2004, that he had never made a

cash payment to Company E in connection with the Comité Aníbal, that he was unaware

of any payment to vendors of the Comité Aníbal campaign that had been made in cash,

and that he was unaware of the use of collaborators to assume part of the Comité Aníbal

unreported debt with Company E, when in truth and in fact, as the defendant then and

there well knew, defendant **RICARDO COLON PADILLA** had made a $50,000 cash

payment to Company E in connection with the Comité Aníbal's unreported debt, he was

aware of and handled the accounting for various cash payments made to vendors of the

Comité Aníbal, and he was aware of credits to the unreported debt of Comité Aníbal at

Company E from collaborators to the campaign, in violation of Title 18, United States

Code, Section 1001(a)(2).

### COUNT TWENTY-FIVE
**Conspiracy to Defraud the Internal Revenue Service**
**Title 18, United States Code, Section 371**

1.    Paragraphs six and eight of the General Allegations section as to Counts One

through Nine of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.      From in or about 2003, and continuing through in or about 2006, the exact dates being unknown to the Grand Jury, in the District of Puerto Rico and elsewhere, defendants,

**[1] ANIBAL ACEVEDO VILA,**
**and**
**[10] LUISA INCLAN BIRD,**

and others known and unknown to the grand jury, did knowingly, willfully, and unlawfully, combine, conspire, confederate, and agree to defraud the United States Treasury Department and the Internal Revenue Service, a department and agency of the United States, by impeding, impairing, obstructing and defeating the lawful government functions of the Treasury Department and the Internal Revenue Service in the ascertainment, computation, assessment, and collection of federal income taxes.

**OBJECT OF THE CONSPIRACY**

3.      The object of the conspiracy was to conceal the fact that defendant **ACEVEDO VILA's** personal income was being supplemented with funds derived from political activity.

**MANNER AND MEANS OF THE CONSPIRACY**

4.      The manner and means of the unlawful conspiracy included:

a.      Defendant **ACEVEDO VILA** delivered and caused the delivery of his American Express credit card statements for his personal credit cards to defendant **LUISA INCLAN BIRD**. Defendant **INCLAN BIRD** then directed others known to the Grand Jury

to use money from Store A to purchase manager's checks and money orders payable to American Express in order to pay the outstanding balance on one or both of the personal credit cards of defendant **ACEVEDO VILA**.

      b.    Defendant **ACEVEDO VILA** also paid and caused the payment of his personal American Express credit cards from his Resident Commissioner campaign account.

      c.    Defendant **INCLAN BIRD** periodically obtained cash in amounts ranging between $500 to $5,000 from persons known and unknown to the Grand Jury for defendant **ACEVEDO VILA** in order to supplement defendant **ACEVEDO VILA**'s personal income and to pay for family vacation expenses.

      d.    During the years 2003 and 2004, defendant **ACEVEDO VILA** received approximately $57,000 worth of clothing purchased by persons associated with his campaigns at high-end clothing stores in Puerto Rico.

      e.    Defendant **ACEVEDO VILA** filed false Puerto Rico and Federal Income Tax Returns as well as false Ethics in Government Act Reports filed with the United States Congress to conceal the various cash payments made to him, the payments to his credit cards and the personal goods and services provided to him.

## OVERT ACTS

      5.    Beginning in the year 2003 and continuing through the year 2004, defendant **ACEVEDO VILA** received the first of many high-end personal clothing items totaling approximately $57,000, which had been purchased for him at exclusive clothing stores by two account executives who worked at Company A and by others connected with

defendant **ACEVEDO VILA's** gubernatorial campaign.

6.      In or about May, 2003, defendant **ACEVEDO VILA** caused a payment in the amount of $3,028.57 to be made from the Comité Acevedo Vilá Comisionado 2000 Inc., bank account to his personal American Express credit card (account number ending in 42000) to pay for air fare for a family vacation to Miami, Florida.

7.      In or about June, 2003, defendant **ACEVEDO VILA** caused a payment in the amount of $1,378 to be made from the Comité Acevedo Vilá Comisionado 2000 Inc., bank account to his personal American Express credit card (account number ending in 42000) to pay for air fare for a family vacation to Orlando, Florida.

8.      In or about July, 2003, defendant **ACEVEDO VILA** caused a payment in the amount of $2,284.77 to be made from the Comité Acevedo Vilá Comisionado 2000 Inc., bank account to himself to reimburse the cost of air fare for a family trip to Miami, Florida.

9.      On or about December 31, 2004, defendant **INCLAN BIRD** directed a person known to the Grand Jury to make a payment in the amount of $7,879.24 to the personal American Express credit card (account number ending in 43008) of defendant **ACEVEDO VILA** with funds withdrawn from the Store A account, which funds were used to purchase a manager's check at Doral Bank to pay off his "sign and travel account" with American Express, including principal and interest payments for vacations he took with his family to Costa Rica, and to pay for a trip for his children to China.

10.      Sometime during the year 2006, the exact date being unknown to the Grand Jury, defendant **INCLAN BIRD** and others known and unknown to the Grand Jury,

---

attended a meeting in Puerta de Tierra to discuss the investigation concerning the clothing purchased for defendant **ACEVEDO VILA**.

11.     During that meeting, defendant **INCLAN BIRD** and others known and unknown to the Grand Jury agreed that the clothing purchases would be falsely claimed as a business expense of the Popular Democratic Party, and that the false expenses would be post-dated in order to include them in reports to the State Electoral Commission in 2005, even though the purchases occurred in 2003 and 2004.

12.     In or about 2006, the exact date being unknown to the Grand Jury, the defendant, **LUISA INCLAN BIRD**, advised a person known to the Grand Jury within the Popular Democratic Party, to fraudulently include only a portion of the clothing purchases in the reports to the State Electoral Commission.

13.     On or about the stated dates, defendant **ACEVEDO VILA** signed and filed false individual income tax returns for the stated years in which he reported the following stated amounts of total income:

| OVERT ACT # | DATE | TAX YEAR | TOTAL INCOME |
|---|---|---|---|
| 13 a | April 06, 2003 | 2003 | $147,798 |
| 13 b | April 04, 2004 | 2004 | $149,514 |

All in violation of Title 18, United States Code, Section 371.

### COUNT TWENTY-SIX

**Filing False Tax Return**

**Title 26, United States Code, Section 7206(1)**

On or about April 6, 2004, in the District of Puerto Rico, defendant,

**[1] ANIBAL ACEVEDO VILA,**

did willfully make and subscribe a joint United States Individual Income Tax Return for

2003, Form 1040, which was verified by a declaration that it was made under the penalties

of perjury, and was filed with the Internal Revenue Service, which tax return he did not

believe to be true and correct as to every material matter, in that the said return reported

on line 22 of the Form 1040, total income in the amount of $147,798, whereas defendant

then and there well knew and believed, defendant had received total income during the

2003 calendar year in excess of that amount, and in that the defendant also attached to

the tax return a copy of his Commonwealth of Puerto Rico Tax Return for 2003, which tax

return the defendant then and there well knew and believed contained material omissions

in the form of unreported income, in  violation of Title 26, United States Code, Section

7206(1).

## COUNT TWENTY-SEVEN

### Filing False Tax Return
### Title 26, United States Code, Section 7206(1)

On or about April 4, 2005, in the District of Puerto Rico, defendant,

### [1] ANIBAL ACEVEDO VILA,

did willfully make and subscribe a joint United States Individual Income Tax Return for

2004, Form 1040, which was verified by a declaration that it was made under the penalties

of perjury, and was filed with the Internal Revenue Service, which tax return he did not

believe to be true and correct as to every material matter, in that the said return reported

on line 22 of the Form 1040, total income in the amount of $149,514, whereas defendant

then and there well knew and believed, defendant had received total income during the

2004 calendar year in excess of that amount, and in that the defendant also attached to

**Superseding Indictment**
**United States of America v. Aníbal Acevedo Vilá, et al**
**Page 55**

the tax return a copy of his Commonwealth of Puerto Rico Tax Return for 2004, which tax

return the defendant then and there well knew and believed contained material omissions

in the form of unreported income, in  violation of Title 26, United States Code, Section

7206(1).

**A TRUE BILL**

**FOREPERSON**

Date: March 24, 2008

ROSA EMILIA RODRIGUEZ-VELEZ
UNITED STATES ATTORNEY

María A. Domínguez
First Assistant United States Attorney

José Ruiz Santiago
Assistant United States Attorney
Chief, Criminal Division

UNITED   STATES   DEPARTMENT   OF
JUSTICE, PUBLIC INTEGRITY SECTION

Daniel Schwager
Trial Attorney